1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ARTHUR BERAHA,

                      Plaintiff,

    v.

STATE OF NEVADA, *et al.,*

                      Defendants.

3:17-cv-00366-RCJ-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

      This case involves a civil rights action filed by Plaintiff Arthur Beraha ("Beraha") against Defendants James Dzurenda ("Dzurenda"), William Reubart ("Reubart"), and William Gittere ("Gittere") (collectively referred to as "Defendants").  Currently pending before the court are two motions for summary judgment.  First, Beraha filed a partial motion for summary judgment (ECF No. 114).  Defendants responded (ECF No. 117), and Beraha replied (ECF No. 121).  Next, Defendants' filed a motion for summary judgment (ECF No. 118/119[2]).  Beraha responded (ECF No. 123), and Defendants replied (ECF No. 126).  Also pending before the court is Beraha's unopposed motion to compel, or alternatively, to show cause why non-party should not be held in contempt (ECF No. 112).  Having thoroughly reviewed the record and papers, the court hereby recommends Beraha's partial motion for summary judgment (ECF No. 114) be denied, Defendants' motion for summary judgment (ECF No. 118) be granted, and Beraha's motion to compel (ECF No. 112) be denied as moot.

///

///

///

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 119 is an appendix of exhibits in support of Defendants' motion for summary judgment.

1    **I.      BACKGROUND AND PROCEDURAL HISTORY**

2         Beraha is an inmate in the custody of Nevada Department of Corrections ("NDOC")

3    and is currently housed at the Ely State Prison ("ESP") in Ely, Nevada. (ECF No. 105.)

4    Proceeding *pro se*, Beraha filed the instant civil rights action pursuant to 42 U.S.C. § 1983

5    alleging various claims against Defendants. (*Id.*)

6         On September 5, 2019, Beraha filed a motion for leave to file a Second Amended

7    Complaint ("SAC") and Defendants filed a non-opposition. (ECF Nos. 99, 101.)  Thus, the

8    court granted the motion and allowed Beraha to file his SAC.[3]  (ECF Nos. 104, 105.)  In

9    his SAC, Beraha asserts three claims against Defendants. (ECF No. 105.)   The SAC

10   asserts the following: (1) in Count I, Beraha alleges a due process claim for property

11   violations and statutory authority against Defendant Dzurenda; (2) in Count II, Beraha

12   alleges a free exercise, Religious Land Use and Institutionalized Persons Act ("RLUIPA"),

13   and equal protection violation against Defendants; and (3) in Count III, Beraha alleges a

14   free exercise, RLUIPA, and equal protections violations against Defendants.  (*Id.*)

15        **A.      Facts Related to Count I**

16        In Count I, Beraha alleges the following: Prior to July 1, 2015, the Nevada

17   Legislature enacted NRS § 209.247(5), which permitted the NDOC Director to withdraw

18   funds from an offender's account and to put that money into a savings account for the

19   offender to be used upon his or her release or for expenses related to an offender's funeral

20   if he or she died prior to his or her release. (ECF No. 105 at 2.) Administrative Regulation

21   ("AR") 258, effective between July 1, 1997, and July 31, 2001, notified offenders that the

22   NDOC would deduct $200 from the inmates' accounts for the savings account. (*Id.* at 2-

23   3.) Beraha reasonably believed that no future deductions would occur under the statute or

24   administrative regulation once the designated amount was reached. (*Id.* at 3.)  However,

25

26   _____

27   [3]      Beraha filed his initial complaint on June 12, 2017. (ECF No. 1.)  On January 11, 2018, the Court granted Beraha leave to file a first amended complaint ("FAC").  (ECF No. 9.)  The Court screened the FAC (ECF No. 10), allowing certain claims and parties to proceed.  (ECF No. 12.)  Having granted Beraha's motion for leave to file a SAC, the SAC (ECF No. 105) is now the operative complaint in this case.

28

2

between July 1, 2015, and July 5, 2015, Beraha discovered that Dzurenda had arbitrarily withdrawn additional amounts of money from Beraha's personal trust account to put into the savings account. (*Id.*) Prison officials admitted that Beraha had not received prior notice about the new deductions. (*Id.*) On July 1, 2015, Dzurenda implemented a temporary, revised version of AR 258 which increased the savings amount to $400. (*Id.*) After August 1, 2015, prison officials put a copy of the revised regulations in the ESP law library. (*Id.*) Beraha had a protectable property interest in the money deposited into his trust account. (*Id.*)

Beraha alleges Dzurenda arbitrarily, negligently, and/or intentionally deducted money from Beraha's account without prior administrative notice in violation of due process. (*Id.*) Beraha does not challenge the authority of Defendants to originally determine the $200 amount but asserts that Dzurenda lacked the authority to modify the amount. (*Id.* at 4.) Beraha argues that NRS § 209.247(5) does not apply to him because he is a death-sentenced inmate with no reasonable expectation of release. (*Id.*) Further, he argues the statute is unconstitutionally vague under the due process clause of the Fourteenth Amendment.  (*Id.*)

### B.    Facts Related to Count II

In Count II, Beraha alleges the following: Dzurenda, Filson, and Byrne violated Beraha's First and Fourteenth Amendment rights and RLUIPA.  (ECF No. 105 at 5.) Beraha is a practitioner of Orthodox Judaism. (*Id.*) Beraha was the first NDOC inmate to receive kosher meals pursuant to a stipulated final judgment in another federal case. (*Id.*) A central tenet and indispensable commandment of Orthodox Judaism was the use of herbs, spices, and incense. (*Id.*) Beraha sincerely believes in this commandment and believes that the inability to use herbs, spices, and incense substantially burdens his religion because he is unable to perform a mandatory cleansing of his soul and make offerings and sacrifices. (*Id.* at 5-6.) Through AR 810.1-4 and operational procedure ("OP") 805, Dzurenda, Gittere, and Reubart permitted general population inmates—including Jewish inmates—to and those participating in group worship, to purchase and use

religious property including herbs, spices, and incense. (*Id.* at 6.) However, inmates who engaged in individual, personal worship were restricted. (*Id.*) Beraha was a death-sentenced inmate housed in the condemned men's unit ("CMU"). (*Id.*) On that basis alone, Beraha was ineligible to participate in group worship and to use herbs, spices, and incense despite the existence of other practicing Jewish inmates using herbs, spices, and incense. (*Id.*)

Through kites, Beraha asked Dzurenda, Gittere, and Reubart to consider a reasonable modification to AR 810 and OP 805 and to extend the use of herbs, spices, and incense to CMU inmates for personal worship given their unique classification. (*Id.*) Defendants denied Beraha's request. (*Id.*)

Although Defendants denied Beraha's request, they permitted a similarly situated Native American inmate to purchase, smoke, and smudge using sage, tobacco, herbs, and incense on the CMU's adjacent recreation yard twice per month. (*Id.* at 6-7.) That inmate was the only Native American practitioner classified on the CMU unit. (*Id.* at 7.) Although Beraha sought identical accommodations, Dzurenda, Gittere, and Reubart denied Beraha's request. (*Id.*) Beraha seeks injunctive relief directing Defendants to modify their policies to allow herbs, spices, and incense for personal worship. (*Id.*)

## C.    Facts Related to Count III

In Count III, Beraha alleges the following: Dzurenda and Gittere violated Beraha's First and Fourteenth Amendment rights and RLUIPA. (ECF No. 105 at 7.) Beraha is a verified member of The ALEPH Institute, a volunteer religious organization that assists prisoners with religious matters. (*Id.*) Once a year, The ALEPH Institute sent religious volunteers to state and federal prisons to perform the religious commandment of adorning the "Tefillin," an indispensable requisite for Orthodox Jewish practitioners. (*Id.*)

In July 2014, ALEPH volunteers prearranged to visit Beraha and perform the adornment of the Tefillin. (*Id.*) At the direction of prison officials, the visit occurred in the ESP chapel. (*Id.*) One lieutenant, one sergeant, and three CERT team members were present during the ceremony. (*Id.*) The officers forced Beraha to wear leg restraints and

belly chains throughout the ceremony until they had to remove his left arm from the belly chain to permit volunteers to wrap the Tefillin around Beraha's left fingers, hand, and arm. (*Id.* at 7-8.) Beraha felt degraded, humiliated, intimidated, and unable to speak freely, engage in, and experience the ceremony because of the unnecessary presence of emergency staff. (*Id.* at 8.) Beraha's classification permitted him to have personal contact visits without any restraints or the presence of emergency staff in the ESP visiting room. (*Id.*) Beraha also had similar religious ceremonies with ALEPH members in the visiting room on other occasions. (*Id.*)

In July 2016, Beraha learned that ALEPH volunteers sought to visit him again to perform their yearly service. (*Id.*) Beraha sent a kite to Baker and Byrne and requested a reasonable accommodation to permit ALEPH volunteers to perform the religious ceremony in his housing unit in a similar manner that Catholic and Christian volunteers were permitted to do for other inmates. (*Id.*) Christian inmates classified similarly to Beraha and who resided in the same housing unit as Beraha were permitted to visit Christian volunteers without shackles and without the overwhelming presence of emergency staff. (*Id.*) Catholic inmates were also permitted to perform communion unshackled in the unit or visiting room. (*Id.*) Byrne and Baker denied Beraha's request. (*Id.*)

Gittere and Dzurenda denied Beraha's grievances. (*Id.*) Gittere and Dzurenda had a policy that required Jewish prisoners to perform religious ceremonies with volunteers in the ESP chapel but permitted similarly situated Catholic and Christian inmates to perform ceremonies with religious volunteers on a weekly or monthly basis in the housing unit. (*Id.* at 8-9.) The policy restricted Jewish inmates from performing religious ceremonies in their housing unit or visiting room. (*Id.* at 9.)

On July 27, 2016, the ALEPH volunteers arrived at the ESP chapel. (*Id.*) Prison officials notified Beraha about the visit and the "unnecessary security measures" that would be undertaken. (*Id.*) As a result, Beraha refused the visit. (*Id.*) Beraha seeks injunctive relief to permit the ALEPH members to visit Beraha during their yearly Tefillin

1   ceremony free of restraints similar to the other inmates similarly classified and housed.

2   (*Id.*)

3      **D. Beraha's Partial Motion for Summary Judgment**

4     On November 27, 2019, Beraha filed a partial motion for summary judgment

5   regarding Count I of his SAC.  (ECF No. 114.)  Beraha asserts there are no genuine issues

6   of material fact as to his procedural due process claim because (1) he was deprived of a

7   protectable property interest, and (2) there was a lack of process.  (*Id.*)  Beraha also

8   asserts there are no genuine issues of material fact as to his due process lack of statutory

9   authority claim because AR 258 exceeds the statutory grant of authority in contradiction

10  of the will of the legislature as expressed in the statute.  (*Id.*)  Defendants opposed the

11  motion (ECF No. 117), and Beraha replied (ECF No. 121).

12     **E. Defendants' Motion for Summary Judgment**

13    On January 2, 2020, Defendants filed a motion for summary judgment (ECF Nos.

14  118/119.)  Defendants assert they are entitled to summary judgment because (1) Beraha

15  failed to exhaust his due process claim regarding AR 258's creation of a funeral fund, (2)

16  the Nevada Legislature has expressly authorized the NDOC's Director to deduct a

17  percentage from deposits into an inmate's account to create a savings account, (3) the

18  regulation preventing inmates from personally possessing and using incense, herbs, and

19  spices is rationally related to a legitimate penological goal, (4) the regulation is the least

20  restrictive option to ensure institutional safety, and (5) Count III is moot as the NDOC has

21  already provided Beraha with his requested relief.  (*Id.*)  Beraha opposed the motion (ECF

22  No. 123), and Defendants replied (ECF No. 126).

23  **II. LEGAL STANDARD**

24    Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle*

25  *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly

26  grants summary judgment when the record demonstrates that "there is no genuine issue

27  as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex*

28  *Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts

are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving

party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. DISCUSSION

### A. Count I – Due Process Claim

Defendants move for summary judgment as to Beraha's Count I due process claim because (1) Beraha failed to exhaust his administrative remedies regarding AR 258's creation of a funeral fund, and (2) the Nevada Legislature has expressly authorized the NDOC's Director to deduct a percentage from deposits into an inmate's account to create a savings account.  (ECF No. 118 at 6-7.)  Beraha moves for summary judgment as to his Count I due process claim asserting there are no genuine issues of material fact because (1) he was deprived of a protectable property interest, and (2) there was a lack of process.  (ECF No. 114 at 8-11.)  Beraha also asserts there are no genuine issues of material fact as to his due process lack of statutory authority claim because AR 258 exceeds the statutory grant of authority in contradiction of the will of the legislature, as expressed in the statute.  (*Id.* at 11-21.)  The court addresses each argument in turn.

#### 1. Exhaustion of Available Administrative Remedies

Defendants' first argument for summary judgment as to Count I is premised upon the assertion that Beraha did not properly exhaust his available administrative remedies.

1   (ECF No. 134 at 6-7.) To prevail on the motion for summary judgment, Defendants must
2   first meet their initial burden of establishing that there are no issues of fact that surround
3   this issue. However, Defendants have failed to meet this burden. Defendants assert that
4   "a review of Beraha's grievances demonstrates he did not exhaust these issues" and
5   "there do not appear to be any grievances between July 2015 (when AR 258 was
6   amended to increase the deduction amount) and December 16, 2019 that allege AR 258
7   is unconstitutional or that the deductions from Beraha's account violated his Due Process
8   rights." (*Id.*) In support of this argument, Defendants provide no actual evidence, such as
9   supporting documentation or declarations, to show that Beraha did not file any grievances
10  related to his Due Process claim. The only evidence Defendants provide is a copy of
11  Grievance 2006-30-74395, which was filed in November 2018 and argues that NRS
12  209.247(5) is unconstitutional (ECF No. 119, Ex. K at 156-158), and copies of the
13  NDOC's grievance policies (ECF No. 119, Ex. E at 81-94).  Without a copy of Beraha's
14  grievance history or some other evidence related to all grievances filed during the time
15  period in question, Defendants cannot establish that there are no issues of fact related to
16  whether Beraha properly exhausted his administrative remedies related to his Count I
17  claim.

**2.    Due Process Protections under the Fourteenth Amendment**

18
19      Defendants next argue summary judgment should be granted as to the Count I
20  due process claim because the Nevada Legislature expressly authorized deducting funds
21  for funeral expenses and the NDOC has competent procedural protections in place
22  governing the deductions. (ECF No. 118 at 7-11.)
23      The Fourteenth Amendment's Due Process Clause guarantees citizens due
24  process of law when government actors deprive them of property, *see* U.S. Const.
25  amend. XIV, and inmates have a constitutionally protected property interest in their
26  inmate accounts, *Hansen v. May,* 520 F.2d 728, 730 (9th Cir. 1974).  Yet the protection
27  is not absolute: as the Ninth Circuit has described, "the Due Process Clause protects
28  inmates from unauthorized [account] deductions."  *Vance v. Barrett*, 345 F.3d 1083, 1091

(9th Cir. 2003) (emphasis added).  "An agency, such as the NDOC, violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures or property '[w]ithout underlying [statutory] authority and competent procedural protections.'" *Nevada Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (quoting *Vance*, 345 F.3d at 1090)).

Under state law, the NDOC Director is required to establish regulations to deduct money from an offender's account to repay the costs of providing a funeral for an offender. NRS 209.246(1)(e). The statute does not limit the amount of money the Director can deduct. *Id.* In addition, NRS 209.247(5) expressly authorizes the Director to deduct funds to pay for an inmate's funeral cost. NRS 209.247 states "the Director may make the following deductions, in the following order of priority, from any money deposited in the individual account of an offender from any source other than the offender's wages." NRS 209.247(5) states the Director may deduct:

> *[a]n amount determined by the Director* for deposit in a savings account for the offender, in which interest on the money deposited does not accrue, to be used for the payment of the expenses of the offender related to his or her release or, if the offender dies before his or her release, to defray expenses related to arrangements for the offender's funeral.

NRS 209.247(e) (emphasis added). Thus, NRS 209.246(1)(e) and NRS 209.247(5) directly authorize the NDOC Director to determine the applicable deduction amount to pay for funeral expenses and subsequently deduct those funds from any money, other than the offender's wages, deposited into an inmate's account. Having found the Nevada Legislature expressly authorized deducting funds for funeral expenses, the analysis turns to whether AR 258 is a competent procedural protection.

Because the constitutional violation is the state's failure to provide due process, rather than the taking or loss itself, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry ... examine[s] the procedural safeguards built into the statutory or administrative procedure effecting the deprivation,

1    and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon*

2    *v. Burch*, 494 U.S. 113, 125-26 (1990).

3           Although pre-deprivation process is favored where possible, a post-deprivation

4    hearing, or a common-law tort remedy for erroneous deprivation, may satisfy due process

5    in some circumstances. *Id.* at 128. When determining whether post-deprivation remedies

6    preclude liability under the Fourteenth Amendment, courts distinguish between

7    unauthorized deprivations and authorized, intentional deprivations. Neither negligent nor

8    intentional unauthorized deprivations of property by prison officials are actionable under

9    § 1983 when the state provides a post-deprivation remedy. *Hudson v. Palmer*, 468 U.S.

10   517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). In contrast, an

11   authorized, intentional deprivation of property is actionable under the Due Process

12   Clause, irrespective of post-deprivation remedies. "Authorized" deprivations are those

13   carried out pursuant to a state's established procedures, regulations, or statutes, *see*

14   *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982), and also those conducted

15   under the apparent authority of state procedures, regulations, or statutes, *see Piatt v.*

16   *MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

17          In *Reece v. Shepherd*, this court held that NDOC AR 711 and AR 711.01 and the

18   procedures outlined therein satisfy due process requirements. *Reece v. Shepherd*, No.

19   3:14-CV-00192-MMD-VPC, 2015 WL 5813243, at *4. The court held that AR 711.01's

20   procedures of notifying the inmate with an Unauthorized Property Notification and

21   providing the inmate options in disposing of the property or appealing the Unauthorized

22   Property Notification via the grievance process satisfied due process protections. *Id.* "No

23   differently than held the *Greene* court, an opportunity to use the NDOC's grievance

24   process in such circumstances 'is all the process that is due.'" *Id.* (quoting *Greene*, 648

25   F.3d at 1019). Similarly, here, AR 258 (ECF No. 119, Exs. A-C), which governs inmate

26   banking, in conjunction with AR 740 (ECF No. 119, Ex. E), which governs the grievance

27   procedure, provides competent procedural safeguards. Because such deprivations are

28   authorized by state law (and thus cannot be cured by post-deprivation remedies), the

11

1   process outlined in AR 258, namely an inmate's ability to make withdrawals from the

2   savings account with the approval of the Director, and the ability to utilize AR 740's

3   grievance procedures, provides critical procedural protections to inmates. Due process

4   requires nothing more. *Reece*, 2015 WL 5813243, at *5.

5       Thus, the procedures provided to Beraha as outlined in AR 258 and 740 satisfy

6   due process requirements. Since officials made available to Beraha adequate procedural

7   protections by which to both access funds in his savings account and grieve about issues

8   related to inmate banking, Count I must be dismissed and Defendants are entitled to

9   summary judgment as a matter of law.   Accordingly, because the court finds that

10  Defendants' motion for summary judgment as to Count I, be granted, it necessarily finds

11  that Beraha's partial motion for summary judgment as to his Count I claim (ECF No. 112)

12  be denied.

13          **B.      Count II – First Amendment and RLUIPA**

14      Beraha's Count II claim relates to his contention that the NDOC's policy of

15  restricting the use of herbs, spices, and incense to group worship substantially burdens

16  his religious practice.  (ECF No. 105 at 5.)  Beraha seeks an injunction requiring the

17  NDOC to allow him to use incense, spices, and herbs twice a month in the institution's

18  recreation yard.  (*Id.* at 6-7.) Defendants move for summary judgment as to Count II based

19  on their contention that NDOC's restrictions serve a legitimate penological purpose.  (ECF

20  No. 118 at 11-15.)

21      "The right to exercise religious practices and beliefs does not terminate at the

22  prison door.  The free exercise right, however, is necessarily limited by the fact of

23  incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

24  maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per

25  curiam) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

26  (1987).  In order to implicate the Free Exercise Clause, the inmate's belief must be both

27  sincerely held and rooted in religious belief.  *See Shakur v. Schriro*, 514 F.3d 878, 884-

28  85 (9th Cir. 2008).  "A person asserting a free exercise claim must show that the

government action in question substantially burdens the person's practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2)" whether there are alternative means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91.

The Defendants do not question Beraha's sincerely held religious beliefs or that those beliefs require him to personally possess and use scented prayer oils, herbs, and spices. The issue, instead, is whether the NDOC's restriction on the personal use and possession of scented prayer oils, herbs, and spices is reasonably related to legitimate penological interests of safety and security cited by the Defendants.

No one disputes that Beraha was denied the ability to personally possess and use scented prayer oil, herbs, and spices at ESP. That, however, does not end the court's inquiry. The court must engage in an analysis under *Turner* of the reasonableness of the restrictions in light of the safety and security concerns posited by the Defendants.

As to the first *Turner* factor, Defendants offer the declaration of Associate Warden ("AW") David Drummond ("Drummond"), which details the following security concerns related to possession and use of scented oils, herbs, and spices:

> (1)    Scented oils, herbs, and spices are flammable under the right conditions. Inmates may not possess flammable materials as it constitutes a significant danger to inmates, staff and the facility, be it danger of fire within a cell, staff attack, inmate attack, destroying contraband.

(2)    Inmates may use scented oils to mask the scent of drugs and contraband.

(3)    Inmates may use scented oils to create slippery surfaces, which create a danger to other inmates or staff.

(4)    These oils can be used on the inmates['] own bodies to avoid cell extraction.

(5)    The incense oil has been used to create contraband inks, tattoo inks, and also inmate made alcohol, known as "pruno."

(6)    The empty vials that contain the scented oils may be used to hide drugs, or mix other banned substances.

(7)    The oils provide possible harm to other inmates from allergic reaction due to possession of oil in cells, or excessive use of scents on skin or clothing.

(8)    The oils created a staffing and safety concern in that scented oil/perfumes may be used for illegal bartering.

(ECF No. 119, Ex. L at 162-163.) The court finds there is a valid, rational connection between the restriction precluding personal possession and use of scented prayer oil, herbs, and spices and the legitimate governmental interests of institutional safety and security put forward by Defendants. *See Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993) (upholding a prohibition on prisoners keeping candles in their cells in light of generalized safety concerns).

Second, the court must consider "whether there are alternative means of exercising the right that remain[ed] open" to Beraha. Here, the Defendants concede that because Beraha is housed in the CMU, there is no alternative mechanism that would allow him to use incense, herbs, and spices. (ECF No. 118 at 12, n. 5.) Though not conclusive, the fact that no alternative means exist that allow Beraha to use incense, herbs, and spices, is some evidence that the regulation is unreasonable. *Overton*, 539 U.S. at 135.

Under the third *Turner* factor, the court is required to consider the "impact accommodation … will have on guards and other inmates, and on the allocation of prison resources generally." *Washington v. Harper*, 494 U.S. 210, 225 (1990). Defendants argue that Beraha's proposed accommodation, personal use and possession of herbs, spices, and incense and requiring the NDOC to allow him to use incense, spices, and herbs twice a month in the institution's recreation yard, will significantly impact ESP's operations and

14

constitute a financial burden. (ECF No. 118 at 13-14.) Defendants again offer the Declaration of AW Drummond, which outlines the following effects and burdens on staff and other inmates:

> (1) The most significant burden fell on the mail room and intake staff, because institutions will likely receive numerous unauthorized packages for inmates from outside persons that contained scented oils and perfumes.
> (2) In the event that the inmate did pre-approve a package with scented oils, it is incumbent upon the staff to determine potential danger to other inmates or staff, or whether the oils are tainted prior to allowing inmate possession.
> (3) In the event that staff determined the oils sent from outside persons were unsafe, tainted, unapproved, or otherwise improper, NDOC must return the package and undertake the cost and time to do so.
> (4) Allowing Beraha to possess scented oils in his cell will have an effect on the Chaplains and Religious Review Team, as they will need to undertake an individual study of suitability of scented oils for each recognized religion.
> (5) Staff would have to be allocated to escort and supervise Beraha while he used the items at the recreation yard. Further, the recreation yard would have to be closed to other inmates may require the adjustment of the other units' yard time.

(ECF No. 119, Ex. L at 163.) Here, the Defendants assert that Beraha's proposed accommodation will essentially cause a disruption to the efficient operation of mailroom operation, as well as a disruption to other inmates' yard time. Further, they assert it will have a financial impact, not only for the cost related to Beraha, but potential costs associated with accommodating others with similar claims of entitlement. Thus, the court finds the third *Turner* factor ways in favor of Defendants. *See Overton*, 539 U.S. at 135 (when accommodating an inmate's demands "would cause a significant reallocation of the prison system's financial resources and would impair the ability of correctional officers to protect all who are inside a prison's walls," the court is "'particularly deferential' to prison administrators' regulatory judgments (quoting *Turner*, 482 U.S. at 90)).

Finally, as to the fourth *Turner* factor, the court considers whether the presence of ready alternatives undermines the reasonableness of the regulations. *Turner* does not impose a "least-restrictive-alternatives test," but asks whether the inmate "has pointed to

1   some obvious regulatory alternative that fully accommodates the asserted right while not

2   imposing more than a *de minimis* cost to the valid penological goal." *Overton*, 539 U.S.

3   at 136 (citing *Turner*, 482 U.S. at 90-91). Here, Beraha's proposed alternative, personal

4   possession and use of incense, herbs, and spices, goes beyond a *de minimis* cost as it

5   would directly impact ESP's financial operations, institutional security, and day-to-day

6   operations of the prison yard, as discussed above.

7       In sum, the Turner factors weigh in favor of the Defendants on this claim. The

8   serious safety and security concerns raised by allowing Beraha to personally possess

9   and use incense, herbs, and spices outweighs the curtailment of his religious practice.

10  Thus, the court concludes that the regulation is reasonably related to a legitimate

11  penological purpose and is valid under *Turner*.

12      As to the RLUIPA claim, Beraha must show that: (1) he participates in a religious

13  exercise, and (2) the prison regulation substantially burdened that exercise. *Walker v.*

14  *Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). The burden then shifts to the state to show

15  its regulation is the least restrictive means of furthering a compelling governmental

16  interest. *Id.* The Defendants concede that Beraha has stated an RLUIPA claim (ECF

17  No. 118 at 14-15), thus the burden shifts to the Defendants to show the regulation is the

18  least restrictive means possible to ensure a compelling governmental interest. The court

19  finds that for all of the reasons discussed above, personal possession and use of incense,

20  spices, and herbs poses a security threat to prison institutions and the NDOC's current

21  prohibition on such use is the least restrictive means of furthering a compelling

22  governmental interest. *See Anderson v. Vare*, 2010 WL 11623518, at *5 (D. Nev. Apr. 1,

23  2010) (granting summary judgment as to injunctive relief on an RLUIPA claim related to

24  a prohibition on sage-burning in cells, finding the state had a compelling interest in

25  protecting the health and safety of those in its custody). Accordingly, the court

26  recommends that Defendants' motion for summary judgment as to Count be granted.[4]

27

28  _____
    [4]    Defendants do not specifically address the Fourteenth Amendment portion of Count
    II in their motion for summary judgment. (*See* ECF No. 118.) However, because the court

1

2    **C.    Count III – First and Fourteenth Amendment and RLUIPA**

3    Defendants move for summary judgment as to Count III based on the claim being

4    moot.  (ECF No. 118 at 15-16.)  Under Article III of the United States Constitution, federal

5    "courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank*

6    *Corp.*, 494 U.S. 472, 477 (1990). This requires an actual case and controversy at "all

7    stages of the litigation." *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974). When a

8    case, or portion of the case, becomes moot, the case (or issue) is "no longer within [the

9    court's] constitutional purview." *Id.* As a general rule, "voluntary cessation of allegedly

10   illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*,

11   does not make the case moot." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)

12   (citing *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). "But jurisdiction, properly

13   acquired, may abate if the case becomes moot because (1) it can be said with assurance

14   that 'there is no reasonable expectation…' that the alleged violation will recur, and (2)

15   interim relief or events have completely and irrevocably eradicated the effects of the

16   alleged violation."  *Id.* (internal citations omitted).

17   Here, Beraha's Count III claim seeks only injunctive relief that allows him to

18   participate in the Tefillin ceremony without the use of restraints and without the supervision

19   of armed correctional officers.  (ECF No. 105 at 9.)  Defendants contend that beginning in

20   2019, the NDOC provided Beraha with his requested relief. (ECF No. 118 at 15-16.)

21   Specifically, in 2019, NDOC changed its policy regarding ALEPH Institute visits. (ECF No.

22   119, Ex. L at 161-62.) A declaration from AW Drummond states that Beraha was allowed

23   to participate, and did participate, in the 2019 Tefillin ceremony without the use of

24   restraints and officers were located in another room during the ceremony. (*Id.*) AW

25   Drummond further declares, "there are no plans to return to the old policy of requiring

26   restraints and CERT supervision."  (*Id.* at 162.)  Thus, Defendants argue that because

27

28   ──────────────
finds that Beraha has failed to establish a constitutional violation regarding the personal
possession or use of incense, herbs, and spices, summary judgment should be granted
as to the entirety of the claim.

1    Beraha has already been granted his requested relief, his Count III claim is moot. (ECF
2    No. 118 at 15-16.)

3         In response, Beraha argues that the claim is not moot because officials could revert
4    back to the old policy.  (ECF No. 123 at 13-15.)  Beraha claims that while Defendants
5    maintain that its old policy was abandoned, Defendants provide "no actual policies or
6    confirmatory memorandums" to establish that NDOC will not revert back to its old policy.
7    (*Id.* at 14-15.)  Further, while Beraha acknowledges that he was unshackled during an
8    ALEPH visit, "an officer wearing a baton and cannisters of pepper spray was poised inside
9    the room three (3) feet from Beraha."  (*Id.* at 15.)  Thus, Beraha asserts that Defendants
10   have not made it absolutely clear that the allegedly wrongful behavior could not reasonably
11   be expected to recur.  (*Id.* at 15 (citing *Friends of the Earth, Inc. v. Liadlaw Env't Serv's.*
12   *(TOC), Inc.*, 528 U.S. 167, 189 (2000).)

13        Here's Defendants' representations that "there are no plans to return to the old
14   policy" are sufficient to satisfy their burden under the voluntary cessation doctrine because
15   "subsequent events made it absolutely clear that the allegedly wrongful behavior could not
16   reasonably be expected to recur."  *See Friends of the Earth, Inc*, 528 U.S. at 189 (internal
17   citations omitted); *see also Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (requiring the
18   government to show that a change in its behavior is "'entrenched' or 'permanent'" to prove
19   mootness (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015))); *see also,*
20   *Espinosa v. Dzurenda*, 775 Fed.Appx. 362 (9th Cir. 2019) (finding defendants had
21   satisfied their burden under the voluntary cessation doctrine based on representations that
22   recognition of Humanism as a faith group was "very permanent.")  Accordingly, the court
23   finds that Beraha has already been granted his requested injunctive relief and therefore
24   his Count III claim is moot.

25   **IV.   MOTION TO COMPEL**

26        On November 20, 2019, Beraha filed a motion to compel or, alternatively, to show
27   cause why nonparty should not be held in contempt (ECF No. 112). Specifically, Beraha
28   asks the court to issue an order compelling nonparty, Wells Fargo Bank, to produce

documents related to his Count I due process claim, or alternatively, to show cause for its failure to respond to a subpoena duces tecum. In light of this Report and Recommendation to grant Defendants' motion for summary judgment as to the Count I due process claim, the court recommends that the motion to compel (ECF No. 112) be denied as moot.

**V.    CONCLUSION**

For good cause appearing and for the reasons stated above, the court recommends that Beraha's partial motion for summary judgment (ECF No. 114) be denied, Defendants' motion for summary judgment (ECF No. 118) be granted, and Beraha's motion to compel (ECF No. 112) be denied as moot.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VI.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Beraha's partial motion for summary judgment (ECF No. 114) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 118) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Beraha's motion to compel (ECF No. 112) be **DENIED AS MOOT**; and

1   **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

2   **DATED**: April 27, 2020.

<br>

_____

**UNITED STATES MAGISTRATE JUDGE**